May it please the Court. Joseph Kwiecinski was a worker subject to the Oregon Workers' Compensation Law, who raised a question of fact as to whether he both invoked that law and applied for benefits under that law. The district court erred in granting summary judgment against his Oregon statutory discrimination claim, finding that he had not done that. Oregon statute ORS 659040 prohibits an employer from terminating an employee because the employer has either invoked the Oregon Workers' Compensation System or applied for benefits under that system. Here Mr. Kwiecinski raised evidence showing a question of fact that he did both. It's important to remember in analyzing this issue that the Oregon Workers' Compensation Board has ruled that he is a worker subject to the Oregon Workers' Compensation Law. That doesn't get you where you need to be to show that he invoked the workers' compensation scheme in Oregon or filed a workers' compensation complaint. The fact that he is an employee subject to the provisions of that act doesn't resolve the question we have before us. Well, in part, Your Honor, the alternative way of protection under the statute, one alternative way besides invoking is to apply for benefits under that system. The definition in the Oregon statute as to what constitutes a workers' compensation claim includes a written request for compensation from a subject worker. Therefore, by virtue of him being an Oregon subject worker and submitting a document which at the top says fill out this form to apply for workers' compensation benefits because of a work injury. Was that an Oregon document? Generally, for workers' compensation claims, there is a process, a state process with a form. There's a specific form that's filled out and there's certain information that has to be put on that form. Is that true in Oregon? It's broader than that, Your Honor. It's not limited to that kind of form. It says a written request for compensation. I don't think it has to be on a certain form. It can be any writing, by definition, according to the statute. But I'm just asking generally, is that the way the workers' compensation scheme works in Oregon? I'm not a workers' compensation attorney. I think that's normally how they start doing that, but I don't think it's limited to that at all. Anyway, so he invoked the system by repeatedly telling his employer that he had been on a job injury during a business trip. Counsel, now you're losing me, because a minute ago I thought you were saying that he invoked by filling out the form. Now you're saying he invoked by telling his employer he was going to. So what exactly is your theory about the first moment he invoked, please? The first moment he invoked when he orally told them that he had an injury, was involved in a business trip accident. That's the first time he invoked. Well, who's them? He was with two coworkers and they knew about the accident. But I think this is very important to be quite specific. Are you talking about the phone call back to the Mr. In my notes I called him Mr. F, because I didn't want to mispronounce his name. But is it that phone call or are you talking about the coworkers who were with him in New York? No, it's not his communication with the coworker. Rather, he made a phone call from the accident scene and then during the battle. Whom, sir, to whom? He made it to his immediate superior. That name, please. You know, I don't have that name. He made the phone call and then he was directed to Mr. F right to get information about workers comp. And I'm just trying to figure out exactly what it is, because when I look at the deposition testimony describing and including your clients deposition testimony, it seems pretty unequivocal that he he was asked the question at that point. Were you contemplating filing in New York? Was that conversation about filing in New York? And he said, yes, not Oregon. So I really want to make sure I'm not missing. Well, your Honor, I think it doesn't really matter. The courts, the law doesn't require him to be an attorney to figure out if I'm crossing this bridge between two states, do I file in Oregon, do I file in Washington? I'm just trying to figure out what he put his employer on notice of. So I think your case would be different, sir, if he had called his employer and indicated or gave even if he was ambiguous, but gave the employer some reason to think, you know, I've been on the job injury and I'm going to file workers comp. But my understanding of the record is that he notified his employer at best that he was contemplating filing in New York, and that's what strikes me as unprotected. I don't think he that came out of his mouth, your Honor. He said he's been contacted by the insurance company, pressuring him to file workers compensation claim. Oregon law is, as this Court has said and shown, interprets invoking very broadly. Right, I agree with that, but when you say it didn't come out of his mouth, and I'm going to let you move on, because I don't mean to belabor the point, but are you talking about you don't think he said that in the phone conversation or you don't think he said that in the deposition relating the phone conversation? Your Honor, I don't recall him ever limiting his reference to filing workers compensation claim to filing a New York workers compensation claim. I think it was just broadly. So let me ask you this question. So the gentleman who I think he spoke to was George Fortunato, the company's president. That's what I have in my notes. Is that correct? Does that jog your recollection? He spoke to, I think, Mr. Klein, I think. Mr. Walsh was his immediate boss. Mr. Fortunato was the president. So he spoke to his immediate boss, he spoke to the president of the company. So he did tell people in a high position of authority that he was injured on the job. I guess the sticking point here that troubles me is that why did he file, I think you have an explanation, but he seemed to invoke the New York compensation laws and not the Oregon compensation laws, and I guess that's a sticking point. If he didn't really involve himself with this imbroglio and all that crazy story about why he did this or why he did that, and one right to Oregon, we might have a different case. But, you know, you seem to have a situation where he went to New York and not to Oregon. So how do you rationalize that? Well, Your Honor, this Court has shown, it's very broadly interpreted, the courts interpret invocation very broadly. He doesn't have to be an attorney and think, I know I'm going to ---- You're asking us to disregard the fact that he went to the New York Workers' Compensation Board for relief. I'm sorry, Your Honor, I didn't quite catch that. You're asking us to disregard that completely. Well, I'm not saying disregard it. I don't think it ---- It has no relevancy whatsoever as your position. It's not a dispositive issue. You're right, Your Honor. Ultimately, the Workers' Compensation Board of Oregon said he's an Oregon subject worker. It would be nonsensical. Does his filing in New York have any relevancy at all to this litigation, or is it just the red herring? Well, Your Honor, if you look at the Oregon statute of what constitutes a written claim for benefits under Oregon law, it could be any written request for compensation on the form. The New York form says it's filled this form out for workers' compensation benefits. But he had an option. He could have gone to New York and he could have gone to Oregon. He had those choices to make. Or am I seeing this wrong? Well, ultimately, it's a judicial decision which State's workers' compensation laws apply to him, and Oregon has been determined to be that State's laws. But he chose to go to New York. Isn't that some sort of an election of his remedies? I don't believe so, Your Honor. But otherwise, wouldn't the Oregon workers' compensation board have said, you've elected your remedies, New York, get out of here? They didn't do that. They didn't do that. They accepted it. Yes, exactly. I mean, they said he's a subject worker. It's still being litigated as to whether or not he ultimately will be found to have a compensable injury. But Oregon protects you whether you have a compensable injury or not. If you bring a claim, you're protected from termination, whether that's a valid claim or invalid. So your position is the fact that he made these phone calls and he spoke to his supervisors and he said, I was injured while he was being trained in New York. He's an Oregon worker. That's sufficient to invoke the Oregon law. Exactly, Your Honor. That's your claim, as simple as that, right? Yes, exactly. I reserve the rest of my time for rebuttal. Before you sit down, just so you can be looking at it, it's ER-43 that I was referring to, where the deposition testimony, in case you want to speak to it on rebuttal. Counsel, before you leave, I wanted to ask you what the specific language in Shone is that you're relying upon to support your argument that he invoked the Oregon workers' compensation scheme by Fallon in New York? Well, in Shone, the court indicated that the specific language. Yes, Your Honor. I will pull that up right away. If you'd rather do it on rebuttal, that would be fine. All right. Thank you, counsel. May it please the court? This is Louis Botellotto for Meditech, the defendant appellee. Can you hear me, Your Honors? Yes. Okay. Thank you for allowing me to do this via video. I am really kind of crippled. My back is completely out. I could not have gotten on a plane this week, and I do appreciate your allowing me to do it this way. I would like to respond to, first of all, when you were pointing out his deposition testimony at his excerpt 43, there's also a place in Meditech's pages 216 and 217 where he specifically said that he did not inform anybody at Meditech about his intention to file a claim in Oregon. So there's no question here that Meditech was never put on notice that he intended to file a claim in Oregon. He said to Meditech, I was not injured in the course of my employment. His own words at pages 188 of the record, and he testified in his deposition at pages 207 and 208 of the record that these were his words and his words alone, and nobody told him what to say. His own words were, we had just left the customer and were on our own way for some personal errands. It was my first time to New York City and wanted to see the Statue of Liberty. We were not working at the time. After the accident. Counsel, I'm sorry. Forgive me, but we've read that, and it would be helpful to me. So you understand that he never. It would be helpful to me if you could respond to, you know what the response is. The response is that he was under a lot of pressure because the auto insurer had contacted him, and you know what the response is. So could you speak to that, please? Well, allegedly an auto insurer pressured him to file a workers' comp claim when in fact he really didn't have one under New York law, as was later determined by the New York workers' comp board. He filed the New York workers' comp claim. It made no indication he was going to invoke Oregon law. It made no indication that it was a work-related accident, and if you look in our brief, we cite to several cases from both Oregon and New York, which hold that a traveling employee is continuously within the course and scope of employment while away from home, except when engaged in a distinct departure on a personal errand. That's Oregon Proctor v. SafeCorp. But those authorities really go to when you're on the job, when you suffer an on-the-job injury, and when you don't. So let me ask you this. If we don't know there's a claim, there's an on-the-job injury, how are we ever apprised that there's any possibility he's going to invoke Oregon workers' compensation? Here's my question. I don't think your contention is that if he had suffered an injury during the course of this business trip while doing his duties or not, that if he had contacted his employer to say, hey, I'm going to file a workers' comp claim, that they would be free to fire him. I don't think that's your contention. That's not my contention. My contention, Your Honor, is that if you tell us you're filing a New York State workers' comp claim, not because you had a work-related injury, but because a no-fault carrier is pressuring you to do it, how in the world are we ever presupposed to know that, in fact, you're going to later claim that you had a work-related injury, and that you're going to later file an Oregon workers' comp claim four months after you were terminated, and that somehow we are charged with a violation of Oregon's statute by doing so? Particularly when it would appear to me that the case is interpreting the Oregon statute to say, quote, Oregon's workers' compensation statute, Oregon revised statute section 659A.040 subsection 1, only protects employees who apply for benefits under Oregon law. That's Jenkins v. Vestas American Wind Tech, Incorporated. And also Anderson v. Smith. I'm going to ask my question, okay? I'm going to ask it again, so maybe we can communicate, because I'm not doubting any of the authorities you're citing. My question is, if he had, if this record showed that he informed his employer that he was going to file a workers' comp claim, and had not mentioned filing under New York law, then what would your position be? If he had said, I'm going to file a workers' comp claim. Unbelievable. Counsel? Oh, yeah. Too bad. And so what are we to do? Saved by the bell. Right. Thank you. Hello, your honors, I'm back. Can you hear me? I'm sorry. Do you remember the question? Yes. Could you repeat the question? I'm sorry, your honor. I freaked out when I lost time. That was a very well-timed exit. Maybe on your end. From my end, I'm fine. I'm about to collapse. Okay. So we're going to try it a third time here. My question, sir, is, it's a hypothetical. Pretend, if you would, that the record is just a phone call to his employer saying, I'm going to file a workers' comp claim. And it's going to be sorted out later whether it's really an on-the-job injury, whether it's really a valid workers' comp claim. Just a notice, I've been hurt, I'm going to file a workers' comp claim without mentioning New York. In that event, what would your position be? Under those facts, it's possible. It's possible. It's a stretch, but it's possible that you might say Meditech might be charged with knowledge he could potentially have filed an Oregon workers' comp claim and maybe invoked the system that way. But that's not the facts of this case, your honor. In this case, we have a situation where he specifically chose New York workers' compensation. And under New York workers' compensation, he filed it for. Let me get into the debate if I can. This is Judge Block. Can you hear me okay? Yes, your honor. So I just wanted to know factually, did he or did he not report that he had an injury on the job to Mr. Fortunato or to anybody else? Yes or no? Did he report that? He did not. Absolutely not. He repeatedly said it. The record is unclear. You're telling me he never said that he had an injury on the job to those people? He specifically said many, many times during the – remember, we're talking about the time period when he was employed. During that time period, every single document he filed, every single workers' comp – I'm not talking about documents. Was there a phone call or not that he made on the job? There was a phone call. Let him finish the question, please. Where he said that I'd been injured on the job. Forget about workers' compensation claims. Did he ever make such a phone call to Mr. Fortunato or to his supervisor, yes or no? I just want to get the facts clear. No. He never did? No. He stated I was injured while on a personal errand. That's the testimony of Mr. Walsh. That's the testimony of Mr. Fortunato. And he never contradicts that testimony. Nowhere in his own testimony did he say, no, I told them that I was working when the incident occurred. He said he was off to see the Statue of Liberty. He later on in his deposition testimony turns around and says, well, after that, we were going to go back and do some more work. But there's no indication that he ever told anyone at Fortunato that at the time. So that really goes to Fortunato having reason to think that he did not have a valid workers' compensation claim, sir? Correct. Well, it also goes to whether or not he was terminated for filing a workers' compensation claim, because if the company was never notified that he was filing a workers' compensation claim, then the motivation could not be filing a workers' compensation claim that precipitated the termination. That's why this question is important to me. Absolutely, Your Honor. And if you have a person telling you, no, I didn't have a work-related accident, how can you possibly? Wait, wait, wait. Here's how you could possibly. I mean, I appreciate that this is a hypothetical. But to be clear, it surely is not your position, and I think you've clarified this, that he could have possibly have called Mr. Fortunato and said, I've got this job on this work-related trip, albeit, you know, when I was touring the Statue of Liberty. But, again, that goes to whether or not it was a valid claim, sir. Surely it's not your position that he could have had that conversation with Mr. Fortunato, said that he had this injury, was contemplating filing a workers' claim, and that it would not have been a retaliation to be terminated for that reason. I mean, you're really relying on the notice being New York. That he was planning to file in New York, right? Absolutely. And also, I'm relying on the fact that New York has a section, workers' compensation law section 120, that has been ruled many times by federal courts of appeals and federal district courts as the exclusive remedy for somebody who files a New York State workers' comp claim and then alleges he was fired in retaliation. He elected his remedy. He filed a New York State workers' comp claim. He began to pursue that claim. It was only four months after he was terminated that, for the first time, he filed an Oregon document that, for the first time, said, no, I was working at the time. This was a work-related accident. And that's why I would argue you cannot say Meditech knew he was ever going to do that. There's no indication that he was ever going to do anything in Oregon. They didn't need to know. They would not have been free to fire him if he said he was going to file an invalid workers' comp claim. That can't be your position. That's not my position at all. Thank you. But my position is, for you to claim and to invoke Oregon statute, you have to have some indication that you're going to make an Oregon claim, not a New York claim. The statute doesn't say that. The statute doesn't say that. It just says that you have to report that you had an injury on the job. And I think he did that to Mr. Fortunato. And then there's this whole colloquy about whether or not it would hurt him to file a compensation claim. But you say, factually, he never told Mr. Fortunato or anybody else that he had been injured on the job. That's your position, right? That is my position. And I think your further position is that in the plaintiff's deposition testimony, actually in all the deposition testimony that I can find, the report in that conversation was that he was contemplating filing in New York. That is correct, Your Honor. All right. I appreciate that clarification. Thank you. You have four minutes left. Was there anything else, counsel? The only thing that I would like to point out and reiterate is that we're not talking about a situation where Mr. Kuczynski was telling people he had a work-related accident anywhere at this time period. There are several documents filed, some of which are filed under penalty of perjury by Mr. Kuczynski, starting as recently as three days after the accident and going all the way to months after he was fired, all of which indicate this was not a work-related accident. And it would seem to me, if you're going to claim that you notified your employee of a work-related accident, there has to be some indication somewhere that you told him it was a work-related accident. That, it seems to me, reading the Oregon law... Excuse me. I don't think the law... You're getting ahead of yourself. There's nothing in the statute that says you have to invoke an Oregon. It says you have to report an injury on the job while you're employed, and he was employed by an Oregon company. He was there in New York just being trained, and you say that he never told anybody. It's not an Oregon company. It's a Delaware company. There's nothing in the statute that says he has to say, I'm invoking Oregon law. He has to report an injury. That's how you invoke the statute. But you're telling me that he never did that because he never had a conversation with anybody where he said he was injured on the job. I have to check the record to find out whether that's true or not. It's a summary judgment motion. There are factual issues that may have to be explored. Well, counsel, it might be helpful to actually read the provision, the statutory provision. It says, it is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS Chapter 656. No mention of another state. That's my argument, Your Honor. There is no mention of another state in the statute, and the case law seems to have to be invoking the Oregon statute. In other areas of the law, they've limited the language to Oregon statutes. For example, for purposes of Chapter 656, courts have interpreted workers' compensation benefits as only including application for Oregon workers' compensation benefits, not federal disability awards or awards made under other states' compensation systems. That's American Building Maintenance v. MacLeese, 296 Oregon 772. There's several cases to that nature, and it would appear to me that if you want to invoke a punitive statute under Oregon law saying that your employer did something discriminatory to you, if the statute says under this provision or under Oregon Section 656, it would seem to me you'd have to show some indication that you told your employer that you had both a work-related injury and that you intended to invoke Oregon law. If you tell your employer that you were not injured in the course of your employment and you're going to file a New York workers' complaint only because a no-fault adjuster told you to do so, I don't believe you've informed your employer of any of that. You're saying basically this is an admission against his interest and that you can take that as an admission on the record and hold that against him to preclude the issuance of summary judgments. Well, it's not just an admission against interest, Your Honor. It's uncontroverted evidence. It's his words. And there's no words anywhere that I could see that he ever told this. How is it an issue of fact if the only language in his language is saying you told us that? Stop it. You're telling me he never reported an injury on the job. I have to check that out. I don't think you're correct about that. But in any event, I think that's your position, that he never said a word to anybody that he had an injury on the job. I think you told me that, right? I don't think that's correct. I don't know of any place on the record that contradicts my position, Your Honor. Well, ask your adversary where on the record did he tell anybody that he had an injury on the job. I think he did. All right. All right, counsel. You've exceeded your time. Rebuttal. So, counsel, I had asked you to tell me the specific language in the shown case that you were relying upon to support your argument. It's the last full paragraph of that opinion. It states, Oregon's workers' competition statute and rules define what is required to invoke a workers' competition claim very broadly. And shown, in that case, shown's first litigation with Freightliner clearly comes within these definitions. But that doesn't, does that say, was that out-of-state, filing with an out-of-state system? No, but in that case, the first claim shown brought was a lawsuit in state court of Oregon for a tort claim and a workers' competition discrimination claim. She did not, the first invocation, the first claim she brought was a lawsuit. It wasn't actually a statutory workers' competition claim in any jurisdiction. But it was seeking relief under Oregon law. Let me ask you this. Yeah. The same, here is where my dilemma is with your position. The same judge who wrote shown also presided over this case and said that the plaintiff did not invoke benefits from Oregon, from the Oregon's workers' compensation system. How do you square those two? If you say that shown is broad, but this same judge said that the actions of the plaintiff were not sufficient to invoke the Oregon statute, how do you square those two rulings? Well, shown, this judge was reversed in the shown case. So this Court reversed her opinion. In shown, it was a lawsuit, not a workers' competition claim. That was the first lawsuit she brought, and the Court in shown said that is enough to invoke the workers' competition. It wasn't even a workers' competition claim in any jurisdiction that she first  competition system. But she invoked protections under Oregon law. For discrimination. Right. And a tort claim. Right. Yes. Right. Well, Your Honor, the law is so broad, invoking, is it her purpose? Counsel, my question has to be answered also. Your adversary said that he never said a word to anybody, any employee or any supervisor, that he was injured on the job. This comes to us in the posture of a summary judgment grant. Right? Because he said a lot of other things, you know, which commingled his case and created a lot of problems for us. Tell me in the record where exactly he reported that he had an on-the-job injury. I'd just like to know factually. Your Honor, he, in the Newark form he filled out, it says at the top, fill out this form to win a claim for workers' competition. But relying on the form he filled out, no conversation that he had with Mr. Fortunato or anybody else. I'm confused about this factually. I'd appreciate it if you can clarify that for me. Your Honor, I'm not sure the words on-the-job injury were the exact words he used in the record. He talked about his ‑‑ Tell me what you rely upon to invoke Oregon law about reporting an injury that he had on the job. What do you rely on? Okay. He was in New York. In the record. In the record. In the record? In the record. Yes. Well, he ‑‑ In the record. In the record. Well, all right. Your Honor, if you look at ‑‑ let me take a moment here. Well, in the record, first of all, Mr. Fortunato sent a letter where he admitted, according to Mr. Fortunato, that Mr. Kwasinski said he wanted to file a workers' competition claim. You rely on that. I'm sorry? You rely on that. What else? Partly, yes, because that's ‑‑ it's an admission by Mr. Fortunato that he was told that Mr. Kwasinski was going to file a claim. But that doesn't say he was injured on the job, though. Under the Oregon law, the Herbert case cited in the record, whether the plaintiff has a valid or even an invalid claim ultimately. But the question is, where in the record did Mr. Kwasinski say he was injured on the job? That's a simple question. Did he or did he not say that he was injured on the job? Your Honor, again, I don't know these exact words came out of him, but he telephoned the employer from the work site, from the accident site, saying, we've been involved in an accident. He spoke to the employer. But he said he was on a personal errand. Not in the conversation. He didn't, in the conversation from the accident site, he didn't say where, he just said we were in the tunnel. On the way to the Statue of Liberty. Didn't he say that? Not in that conversation. He was talking about where they were in the injury. And then they had a conversation, the balance of his business trip. He repeatedly spoke to Mr. Fortunato and Mr. Walsh about the injury, the accident, getting calls about filing workers' compensation claims. Counsel, before you leave, I read the language of the statute, and it seems to say, it seems to include as an element that the worker has applied for benefits or invoked, no matter how broadly you define that, or utilized the procedures provided for in ORS Chapter 656. It appears to me that your argument is reading out the last phrase, as provided for in Oregon law, by saying that filing a New York claim would invoke this statute. I don't see how you get there. Well, Your Honor, it's very broadly interpreted. In the Herbert case, if you look at that case in our brief, the injured truck driver in that case didn't say anything about filing workers' compensation claims, just talked about exposure to some harmful chemical in the truck she was driving. Herbert stands for the proposition that it doesn't need to be written notice, which is why Judge Rawlinson is saying, even if you interpret invoke very broadly, you've still got the problem that here the record we have is that the specific invocation, albeit orally, oral, was of New York law. That's the problem. Well, Your Honor, I think Judge Block is right, that if he mentions workers' compensation, he doesn't have to be an attorney to know I'm going to be filing a New York or Oregon claim. He just has to say I have a workers' compensation claim and his evidence. I never said that the filing of the claim was sufficient. I want to know where he told his employee that he was injured on the job. Let me ask you a totally irrelevant question, okay? Very good. How injured was this person? I'm sorry? How injured was he? How injured was he? He had a back injury and a... Back injury. Pardon me? Back injury. Back injury. And he was a... That's ironic. Yeah. He had treatment for a number of months. Eventually he recovered. He's okay. Yeah. His workers' compensation claim is still proceeding, Your Honor. See, district court judges ask irrelevant questions. Very good. I see my time is up. You've exceeded your time. Thank you. Thank you to both counsel. Thank you, counsel, for appearing by video. Thank you, Your Honor. The case just argued is submitted for decision by the court. The next case on calendar for argument is Smith v. Is it Everest? Should it be Everest? Smith v. ICTSI, whichever attorney is for that case.
judges: Rawlinson, Christen, Block